IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| KENNETH LEE BROWN, | |
| Plaintiff, | CIVIL ACTION NO.: 2:22-cv-80 |
| v. | |
| JESSIE WILLIAMS; DAVID STOKES; and STANLEY SHEPARD, | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

This matter comes before the Court on Defendants' Motions to Dismiss.  Docs. 11, 17. Plaintiff filed Responses, opposing Defendants' Motions.[1]  Docs. 19, 20.  For the following reasons, I also **RECOMMEND** the Court **GRANT** Defendants' Motions to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

**BACKGROUND**

On August 22, 2022, Plaintiff filed this Complaint, asserting retaliation claims under 42 U.S.C. § 1983.  Doc. 1.  Plaintiff asserts Defendants have retaliated against him since September 2021.  Id. at 3. The Court determined Plaintiff's claims survived frivolity review and allowed all

---

[1] Plaintiff's second filing states he adopts all arguments in his first Response against Defendant Shepard's Motion to Dismiss.  Doc. 20 at 1.

claims against Defendants Williams, Stokes, and Shepard to go forward. Doc. 4. On December 27, 2022, Defendants Stokes and Williams filed their Motion to Dismiss. Doc. 11. Defendant Shepard flied his Motion to Dismiss on January 17, 2023. Doc. 17. Plaintiff responded in opposition to both Motions. Docs. 19, 20.

## DISCUSSION

Defendants argue Plaintiff's Complaint should be dismissed because Plaintiff did not exhaust his administrative remedies prior to filing his Complaint. Doc. 11-1 at 2; Doc. 17 at 2. Plaintiff responds he did, in fact, file a grievance about the issue. Doc. 19 at 1–2.

### I. Prison Litigation Reform Act's Exhaustion Requirements

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 578 U.S. 632, 639–40 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the

2

PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248

3

F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.    Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for suing, one exception exists. Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017).  Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of

4

its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 642. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 642. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.;

5

see also Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

6

**III.     Applying <u>Turner</u>**

   **A.     The Georgia Department of Corrections' ("GDC") Administrative Remedies**

The Long Unit, where these claims arose, utilizes the GDC procedures for prisoner grievances. Doc. 11-2 at 1. The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") 227.02. <u>Id.</u> at 2–3. Under SOP 227.02, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" that "personally affects the offender" and that is not expressly listed in the SOP as a "non-grievable issue." Doc. 11-3 at 4.

The grievance procedure consists of two steps, the original grievance and the Central Office Appeal. Doc. 11-3 at 8. Under SOP 227.02, absent "good cause," original grievances must be filed within 10 days from the date the inmate knew or should have known of the facts giving rise to the grievance. <u>Id.</u> Then, if an inmate is dissatisfied with the response, he may appeal the decision to the GDC Central Office. <u>Id.</u> at 14. An appeal must be filed within seven days of an inmate receiving the Long Unit's Warden's response. <u>Id.</u> Once the time allowed for the Warden to respond has expired, the inmate may file a Central Office Appeal. <u>Id.</u> The GDC Commissioner then has 120 days after receiving the appeal to deliver a decision to the inmate. <u>Id.</u> at 15. Only then is the grievance procedure complete. <u>Id.</u> at 15.

   **B.     Plaintiff Did Not Exhaust Available Administrative Remedies**

      *1.     Plaintiff's claim does survive under <u>Turner</u> step one.*

At step one under <u>Turner</u>, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take the plaintiff's version of the facts as true." <u>Turner</u>, 541 F.3d at 1080–82.

Defendants assert, while Plaintiff did submit grievances, he did not appeal the grievances he submitted and failed to fully exhaust his administrative remedies. Doc. 11-1 at 6. Defendants state Plaintiff only filed two grievances during the time period he alleges he was facing

7

retaliation.  Id.  On July 6, 2022, Plaintiff filed Grievance Number 340564, which was rejected as filed out of time.  Id.  Plaintiff did not appeal this decision.  On August 7, 2022, Plaintiff filed Grievance Number 867465, which Plaintiff closed and did not pursue further.  Id.  Defendants state these are the only grievances from Plaintiff in their records.  Id.

      Plaintiff asserts he filed a grievance on December 3, 2021, about the issues currently before the Court.  Doc. 19 at 1.  Plaintiff asserts the grievance was given to a counselor because Plaintiff was in segregation at the time.  Id. at 1–2.  Plaintiff states the receipt of the grievance was signed by a counselor, and he provides a copy of the grievance receipt.  Id. at 8.  Plaintiff does not provide a copy of the grievance itself.  Plaintiff then describes how prison officials continued to not respond to his grievance.  Id. at 6.

      Plaintiff's allegations and Defendants' allegations plainly conflict: Defendants assert Plaintiff only filed two, unrelated grievances during the period relevant to the case.  Plaintiff disputes this, saying he filed an additional, related grievance that was not moved through the grievance process by prison officials.  This raises a question of whether the grievance process was unavailable to Plaintiff.  See Ross, 578 U.S. at 642 ("[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.").  There is a genuine dispute of material fact, and—at step one under Turner—the Court must take Plaintiff's allegations as true.  Looking solely at Plaintiff's Response, his allegations are enough to survive a motion to dismiss for failure to exhaust his administrative remedies under the first prong of the Turner test.

2.      *Plaintiff's claims should be dismissed under <u>Turner</u> step two.*

The parties' filings implicate a factual question. Therefore, the Court must determine, as a factual matter, whether the administrative remedy was available to Plaintiff.

"[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts." <u>Womack v. Sikes</u>, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008). Nevertheless, a presiding judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies. <u>Bryant</u>, 530 F.3d at 1374 (citing <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119–20 (9th Cir. 2003)). Similarly, the Supreme Court has explained "discredited testimony" cannot be relied upon to resist summary judgment. See <u>Womack</u>, 2008 WL 4104148 at *5 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256–57 (1986)).

Failure to exhaust is an affirmative defense that, like other affirmative defenses, puts the burden of proof squarely on defendants. See <u>Presley v. Scott</u>, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); <u>Berger</u>, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); <u>Whatley I</u>, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; <u>see also</u> <u>Abram</u>, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial). Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a

9

'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'" Womack, 2008 WL 4104148, at *6 (quoting Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue"). Here, both parties have submitted argument or evidence on the issue of exhaustion and the availability of the grievance process. Therefore, the parties have had a sufficient opportunity to develop the record.

Defendants have carried their burden to show the grievance procedure was available to Plaintiff at the time of the incidents. Assuming, without deciding, Plaintiff's December 2021 grievance sufficiently described the alleged incident and Plaintiff's complaints, Plaintiff's assertions of a single time the prison lost track of a grievance do not excuse his failure to exhaust. Plaintiff asserts no one ever responded to his grievance and, thus, he was unable to appeal his grievance beyond that point. Doc. 19 at 5–6. However, the SOP is clear, once the time allowed for the Warden's decision to be given to the inmate has expired, the inmate may file a Central Office Appeal. Doc. 11-3 at 14. Thus, even if Plaintiff's grievance was not responded to, he could have still appealed the lack of response.

Plaintiff briefly states the prison officials did not give him appeal forms. Doc. 19 at 3. However, the SOP provides other methods by which prisoners can submit appeal forms, such as

10

via a kiosk or tablet.  See Doc. 11-3 at 14.  Though Plaintiff alleges he was initially on a segregation unit and had to submit a written grievance, he states he was arguing with his counselor about a response to his grievance for "eight months."  Doc. 19 at 6.  Plaintiff could have submitted an out-of-time appeal prior to filing his Complaint, as a grievance coordinator can waive the time limit for an appeal for good cause.  See Doc. 11-3 at 14.  By not fully appealing his grievance, Plaintiff has failed to exhaust his administrative remedies.

Defendants have carried their burden to show Plaintiff did not exhaust his available administrative remedies.  Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motions to Dismiss and **DISMISS** Plaintiff's claims against all Defendants.

### IV.   Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now.  See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x

11

321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motions to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed

12

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 31st day of July, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA